# SUPREME COURT.

THE AMERICAN BIBLE SOCIETY agt. SARAH STARK and others.

Under the Code there is no necessity of a *cross-bill* in any case unless it is to bring in other parties.

The testator, William Gray, died in the city of New York in the year 1858, leaving him surviving his widow, Sarah Gray, and his two sons, Henry M. Gray and William M. Gray, his only heirs-at-law. By his will he made his widow the executrix, and gave to her all his estate, to be used and enjoyed by her during her natural life, or so long as she remained his widow.

The will also contained a provision that " should my widow marry again she will be entitled to and receive from my estate, should she demand it, $3,000, * * * the possession and management of the estate at her second marriage to pass from her hands and to be transferred to my sons, subject to the following restrictions:

" 1. The principal to remain entire until my son, William M., shall have reached the age of forty years, which will be in February, 1866. * * * Should both my sons die before their mother, leaving no children, then at her death the estate shall be sold and the proceeds divided into two equal parts, the one-half to my widow, to be distributed as she may have by will directed, the other half to be shared equally by the American Bible Society and by the American Colonization Society."

The testator died seized of the premises known as numbers 101 and 103 West Eleventh street, in the city of New York, and of personal property. The latter was sold by the executrix and converted into money.

Henry M. Gray died September 21, 1863, unmarried and without issue, and leaving a will whereby he gave all his property to his brother, William M. Gray.

William M. Gray died in October, 1869, unmarried and without issue, leaving his last will, which was proved as a will of real and personal estate. The executor thereof and the devisees thereunder are parties to this action.

Sarah Gray died October 21, 1871, leaving her will, which was duly proved and letters testamentary issued thereon to the defendant, Sarah Stark, and John Crolius.

After the death of her sons, Sarah Gray by deed dated May 17, 1870, for a

nominal consideration, conveyed all her right, title and interest of, in and to the premises 103 West Eleventh street to Sarah Stark.

There was no executor, trustee or other person in life, having power to sell the said lands in pursuance of the will of William Gray.

The questions involved in the construction of the will are, 1st. Could the absolute power of alienation, under the provisions of this will, possibly be suspended for more than two lives in being? 2d. What interest, if any, did Sarah Stark take under the deed from Sarah Gray to her of the premises 103 West Eleventh street?

*Held*, that it was the intention of the testator to provide that in case Sarah Gray remarried and William M. Gray lived until he was forty years of age, the estate should not be sold until he should arrive at that age; that the limitation was only intended to apply in case William M. Gray attained the age of forty years. Such a limitation would not be within the prohibition of the statute. If it had been intended that the limitation should extend to February, 1866 (which would be within the statute), there would have been no mention made of the age of William M. Gray.

On the death of the two sons without issue, before their mother, then at her death the will provides that " the estate shall be sold and the proceeds divided into two equal parts, the one-half to my widow, to be distributed as she may have by will directed, the other half to be shared equally by the American Bible Society and by the American Colonization Society."

*Held*, that there was no question but that the two societies have the right to claim that the estate shall be sold, and that they are entitled to receive one equal half part of the proceeds of such sale.

Mrs. Gray, upon the death of her two sons without issue, had, by the will, conferred upon her, she being a tenant for life, a general and beneficial power to devise the inheritance, and thus was brought directly within the provisions of the statute giving her an absolute power of disposition of one undivided half of the estate. This absolute power of disposition being unaccompanied by any trust, and no remainder being limited upon her estate, being grantee of the power, she by the statute became entitled to an absolute fee in the one undivided half of the estate. Thus entitled, she made a conveyance, by which she conveyed to the defendant, Sarah Stark, in fee, the house number 103 West Eleventh street.

But Mrs. Gray's interest in the estate was an undivided interest, and she could not partition the estate of her own will. Therefore all she could convey was such undivided interest, and in attempting to convey to Sarah Stark the whole interest, she conveyed more than she had. But her conveyance was not for that reason void, but carried all she had a right to convey, one equal undivided half interest, the title to which became vested in Sarah Stark.

Under the will of Sarah Gray the two above named societies became enti-
tled to claim from her estate the amount of the bequest to them, being
$1,489.06 to each.

It was, therefore, ordered and directed that the real estate in question be
sold in separate parcels by a referee and out of the proceeds should be
paid certain expenses and costs.

The net proceeds of the sale of number 103 West Eleventh street to be paid
by the referee, one-half to Sarah Stark, one-quarter each to the two
societies. The net proceeds of the sale of number 101 to be paid, one-
quarter each to the two societies, and the remaining one-half to be paid
into court to await the further order of the court.

*New York Special Term, February,* 1873.

IN the year 1858 one William Gray, of the city of New
York, died, leaving him surviving his widow Sarah Gray,
and his two sons, Henry M. Gray and William M. Gray, his
only heirs-at-law; and also leaving his will, which was duly
proved as a will of real and personal estate. Letters testa-
mentary thereon had been duly issued to said Sarah Gray.

The will gave to the testator's widow all his estate, to be
used and enjoyed by her for her support and comfort during
her natural life, or as long as she remained his widow, with a
provision that, from the income of said estate, his son, Wil-
liam M. Gray, should receive a certain sum for his support.

" Should my son, Henry M. Gray, not need aid, then of
the whole amount which the said William M. shall have
received from the time of my decease until that of his mother,
one-half shall be paid to the said Henry M. at the settlement
of the estate." * * * * * * * * * " Should my
widow marry again she will be entitled to and receive from
my estate, should she demand it, $3,000." * * * *
" The possession and management of the estate at her second
marriage to pass from her hands and to be transferred to my
sons, subject to the following restrictions: 1. The principal
to remain entire until my son, William M., shall have reached
the age of forty years, which will be in February, 1866."
* * * * " Should both my sons die before their mother,
leaving no children, then at her death the estate shall be sold

American Bible Society agt. Stark.

·and the proceeds divided into two equal parts—the one-half to my widow, to be distributed as she may have by will directed, the other half to be shared equally by the American Bible Society and by the American Colonization Society."

Said William Gray had, at the time of his death, certain personal estate, all of which came to the hands of Sarah Gray, as his executrix, and was by her sold and converted into money ; and the said William Gray died seized of the premises known as Nos. 101 and 103 West Eleventh street, in the city of New York.

Henry M. Gray died September 21, 1863, unmarried and without issue, and leaving a will whereby he gave all his property to his brother, William M. Gray.

William M. Gray died in October or November, 1869, unmarried and without issue, leaving his last will, which was duly proved as a will of real and personal estate. The executor thereof and the devisees thereunder are parties to this action.

Said Sarah Gray died October 21, 1871, leaving her will, which was duly admitted to probate, and letters testamentary thereon were issued to the defendants, Sarah Stark and John Crolius.

After the death of her said sons, the said Sarah Gray, by deed dated May 17, 1870, for a nominal consideration, conveyed all her right, title and interest of, in and to the premises known as No. 103 West Eleventh street to Sarah Stark.

There was no executor, trustee or other person in life, having power to sell the said lands in pursuance of the will of William Gray.

John Crolius, one of the defendants, commenced a so-called cross-action against the American Bible Society, the American Colonization Society and Sarah Stark ; and his complaint therein set forth substantially the same matters alleged in his answer in the first suit, including the charge that the deed to Sarah Stark was fraudulently obtained and void, and also prayed for and insisted upon the appointment of a trustee to

execute the unexecuted provision of the will of William. Gray, deceased.

> CHARLES EDWARD TRACY, *for the American Bible Society.*
> HOMER A. NELSON, *for Sarah Stark.*
> HENRY WHITTAKER, *for John Crolius.*
> ELY & SMITH, *for executor of W. M. Gray.*
> ANDERSON & YOUNG, *for devisee of W. M. Gray.*
> ALFRED L. EDWARDS, *for American Colonization Society.*

VAN BRUNT, *J.*—Under the Code I am unable to see the necessity of a cross-bill in any case, unless it is to bring in other parties. Where all the parties are before the court, a defendant may set up all his claims which are embraced within the issue presented by the complaint and obtain affirmative relief, not only against the plaintiff but against a codefendant (*Code*, § 274). The cross-bill in this case seems, therefore, to be entirely unnecessary, and should be dismissed with costs.

The questions which are involved in the construction of the will of William Gray seem to be these.

1. Could the absolute power of alienation, under the provisions of this will, possibly be suspended for more than two lives in *being?*

2. What interest, if any, did Sarah Stark take under the deed from Sarah Gray to her of premises 103 West Eleventh street?

It is claimed that the power of alienation was suspended for more than two lives in being, because the will provided that in case Sarah Gray remarried the management and possession of the estate should be transferred to his sons, but upon condition that the principal should remain entire until his son, William M., should arrive at the age of forty years, which would be in February, 1866. There is no doubt that

if this provision is to be construed as in any event preventing alienation before February, 1866, it is within the prohibition of the statute, because it might possibly extend beyond two lives in being. The remarriage of Sarah Gray and death of William M. Gray before February, 1866, would not relieve the estate from the condition. But I do not think that this was the intention of the testator. It seems to me that it was the intention of the testator to provide that, in case Sarah Gray remarried and William M. Gray lived until he was forty years of age, the estate should not be sold until he should arrive at that age; such a limitation would not be within the prohibition of the statute.

That the limitation was only intended to apply in case William M. Gray attained the age of forty years, would seem to be evidenced by the fact of his connecting the limitation with the life of William M. Gray. If it had been intended that the limitation should extend to February, 1866, whether William M. Gray lived or died, I do not think that any mention would have been made of the age of William M. Gray. If the words, " if he shall so long live," were inserted, it would relieve the sentence of all ambiguity, and it is the most natural interpretation to put upon this limitation that such was the intention of the testator.

Sarah Gray did not remarry, and survived both her sons, who died leaving no issue. The estate then became subject to the following provision of the will of William Gray : " Should both my sons die before their mother, leaving no children, then at her death the estate shall be sold and the proceeds divided into two equal parts, the one-half to my widow, to be distributed as she may have by will directed; the other half to be shared equally by the American Bible Society and by the American Colonization Society."

There can be no question but that the two societies have the right to claim that the estate shall be sold, and that they are entitled to receive one equal half part of the proceeds of such sale.

The main question to consider is, what interest, if any, did Sarah Stark take by virtue of the deed from Mrs. Gray to her of premises 103 West Eleventh street?

It will be observed that upon the death of the two sons of William Gray without issue, the condition of the estate was simply this: Sarah Gray was tenant for life in the whole estate, having a general beneficial power to devise one undivided half thereof.

Section 77 of the Revised Statutes, relating to powers, defines a power to be general where it authorizes the alienation in fee by means of a conveyance, will or charge of the lands embraced in the power to any alienee whatever; and section 79 declares a general power to be beneficial when no other person than the grantee has, by the terms of its creation, any interest in its execution.

The power of Sarah Gray, therefore, after the death of her sons without issue, to dispose of by will one-half of the said estate, was a general beneficial power, she having the power to devise in fee to any person whatever, and no person but the grantee having any interest in the execution of the power.

Section 81 provides that where an absolute power of disposition, not accompanied by any trust, shall be given to the owner of a particular estate for life or years, such estate shall be changed into a fee, &c.

Section 83 provides that in all cases where such power of disposition is given and no remainder is limited upon the estate of the grantee of the power, such grantee shall be entitled to an absolute fee.

Section 84. Where a general and beneficial power to devise the inheritance shall be given to a tenant for life or years, such tenant shall be deemed to possess an absolute power of disposition within the meaning and subject to the provisions of the preceding sections.

Mrs. Gray, upon the death of her two sons without issue, had, by the clause of this will above quoted, conferred upon her, she being a tenant for life, a general and beneficial power

American Bible Society agt. Stark.

to devise the inheritance, and thus was brought directly within the provisions of section 84, giving her an absolute power of disposition of one undivided half of the estate. This absolute power of disposition, being unaccompanied by any trust, and no remainder being limited upon the estate of Mrs. Gray, the grantee of the power, she, by section 83, became entitled to an absolute fee in the one undivided half of the estate. Mrs. Gray being thus entitled to an absolute fee in one equal undivided half of this estate, which consisted of the houses and lots Nos. 101 and 103 West Eleventh street, New York city, made a conveyance by which she conveyed to the defendant, Sarah Stark, in fee, the house No. 103 West Eleventh street.

It is claimed by Sarah Stark that she thereby became entitled to these premises 103 West Eleventh street, they being one-half of the estate of which Mrs. Gray by the provisions of the statute had an absolute fee.

But this claim cannot be allowed, because Mrs. Gray's interest in the estate was an undivided interest, and she could not partition the estate of her own will, she taking one portion as her half. The other beneficiaries under the will have the right to be heard upon that question, nor could their rights in this property be in anywise changed or abridged by any act of Sarah Gray. Her absolute interest was an undivided interest in the whole estate, and all she could convey was such undivided interest, and in attempting to convey to Sarah Stark this whole interest she conveyed more than she had. But her conveyance was not for that reason void, but carried all that she had a right to convey: one equal undivided half interest in 103 West Eleventh street, the title to which became vested in Sarah Stark by the conveyance from Sarah Gray.

It has been suggested that the estate of Henry M. Gray has a claim upon the estate of William Gray for an amount equal to one-half of the amount paid to William M. Gray; but it seems to me that the claim of Henry M. Gray arose

only on the death of his mother, and he having died before she did, it thereby became lost.

Under the will of Sarah Gray the two above named societies became entitled to claim from her estate the amount of the bequests to them, being $1,489.06 to each.

The real estate in question should, therefore, be sold in separate parcels by a referee, to be appointed by this court. Out of the proceeds should be paid, *first*, the expenses of said sale and the referee's fees; and, *secondly*, the costs of the parties to this action.

The houses No. 101 and 103 West Eleventh street being sold separately, the above charges should be divided between them.

The net proceeds of the sale of No. 103 West Eleventh street should be paid by said referee as follows: One-half part thereof to Sarah Stark; one-quarter to the American Bible Society, the remainder to the American Colonization Society.

The net proceeds of the sale of No. 101 West Eleventh street should be paid by said referee as follows: One-quarter to the American Bible Society; one-quarter to the American Colonization Society; and the remaining one-half should be paid into court, to await the further order of the court.